CONTURA R. FONTENOT, EMPLOYEE, PLAINTIFF v. AMMONS SPRINGMOOR ASSOCI-
ATES, EMPLOYER, RELIANCE INSURANCE COMPANY, c/o N.C. INSURANCE
GUARANTY ASSOCIATION, CARRIER, DEFENDANTS

No. COA05-396

(Filed 21 February 2006)

## 1. Workers' Compensation— additional medical expenses—unauthorized medical treatment—notice—reasonable time

The Industrial Commission did not err in a workers' compensation case by ordering defendants to pay plaintiff employee's additional medical expenses for alleged unauthorized medical treatment, because: (1) plaintiff's Form 33 contains a specific allusion to N.C.G.S. § 97-25 which authorizes the Commission to approve an employee's request for medical treatment of her own choosing; (2) based on the facts in this case, the Commission was permitted to find that plaintiff sought its approval for additional medical treatment within a reasonable amount of time after seeking such treatment; (3) the Form 18 at issue constituted a written request for additional medical treatment within two years after the last payment of medical compensation since it specifically referenced a change in plaintiff's medical condition inasmuch as it stated that there was an aggravation of and/or change of condition from accepted injury and set forth a new diagnosis, and it also contained boilerplate language giving notice to the employer in order that the medical services prescribed by the Workers' Compensation Act could be obtained; and (4) the record indicated that defendants were aware that plaintiff was seeking additional medical compensation because the Form 61 which defendants filed in response to plaintiff's Form 18 specifically indicated that further treatment would be denied.

## 2. Workers' Compensation— disc herniation—causation—accident at work—medical expert

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee's disc herniation was causally related to her 29 March 1999 accident at work, because: (1) if the link between an employee's condition and an accident at work involves a complex medical question, as in the instant case, a finding of causation must be premised upon the testimony of a medical expert; and (2) four doctors provided competent medical evidence that tended to link plaintiff's herniated disc to her 29 March 1999 accident at work.

**3. Workers' Compensation— potential future disability— diminished earning capacity**

The Industrial Commission erred in a workers' compensation case by awarding compensation for potential future disability, and this portion of the Commission's award is vacated and remanded for entry of a corrected order, because: (1) disability refers to diminished earning capacity, and at the time of the hearing before the Commission, plaintiff was working with a new employer and was earning significantly higher wages than she had earned while working for defendant employer; and (2) no evidence was presented to show that plaintiff would be under a disability in the future, and the Commission made no findings concerning any such future disability.

**4. Workers' Compensation— failure to incorporate statute of limitations into award**

Standing alone, the failure of the Industrial Commission in a workers' compensation case to state that its award is subject to the statute of limitations under N.C.G.S. § 97-25.1 does not warrant remanding the case to the Commission. However, given that the case is already being remanded for a different issue, the Court of Appeals also remands this case to the Commission to incorporate the statutory limitations into its award.

Appeal by defendants from an opinion and award filed 18 November 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 November 2005.

*Law Offices of George W. Lennon, by George W. Lennon, for plaintiff appellee.*

*Young Moore and Henderson P.A., by Joe E. Austin, Jr., and Jennifer T. Gottsegen, for defendant appellants.*

McCULLOUGH, Judge.

Defendant Ammons Springmoor Associates, Incorporated, and its workers' compensation carrier (hereinafter referred to collectively as "defendants") appeal from an opinion and award of the North Carolina Industrial Commission granting medical and disability compensation to claimant Contura R. Fontenot. We affirm in part, vacate in part, and remand.

FONTENOT v. AMMONS SPRINGMOOR ASSOCS.

[176 N.C. App. 93 (2006)]

## Facts

On 29 March 1999, claimant Contura R. Fontenot ("Fontenot") was working as a Certified Nursing Assistant for defendant Ammons Springmoor Associates ("Springmoor") when she suffered a back injury while lifting a patient. Ammons and its workers' compensation carrier admitted that Fontenot was entitled to compensation and medical benefits for her back injury, and Fontenot was referred to Tremont Medical Center for treatment. Tremont referred Fontenot to an orthopaedic surgeon, Dr. Daniel J. Albright. Without performing an MRI, Dr. Albright diagnosed Fontenot with a pulled muscle, indicated that she would become better with time, and in April or May of 1999, advised her that she could return to work without any restrictions. When she attempted to resume her employment at Springmoor, Fontenot continued to experience pain.

Thereafter, Fontenot began experiencing pain and numbness in her right hip and right leg, and her pain increased with time. According to Fontenot, she had not experienced an accident, injury, or other traumatic incident in the time period after her 29 March 1999 compensable injury but before the onset of the problems with her right hip and leg.

In November 2000, plaintiff sought treatment at an emergency room for right leg pain and numbness. After an examination at the emergency room, Fontenot was referred to her family doctor, Dr. Balwinder Sidhu. Dr. Sidhu prescribed conservative treatment, and when this course of action was unsuccessful, Dr. Sidhu ordered an MRI and referred Fontenot to a neurosurgeon, Dr. Samuel St. Clair.

After reviewing the MRI, Dr. St. Clair diagnosed Fontenot with a large L5-S1 disc herniation. In an 8 January 2001 appointment with Fontenot, Dr. St. Clair recommended surgery to address the herniation. Fontenot then sought a second opinion from an orthopaedic surgeon, Dr. T. Craig Derian, who concurred with Dr. St. Clair's recommendation.

On 23 January 2001, Fontenot filed a Form 18 "Notice of Accident to Employer and Claim of Employee." This filing contained the following statement: "The nature and extent of injury is HNP L5-S1, full extent unknown—aggravation of and/or change of condition from accepted injury." Defendants responded on 21 September 2001 by filing a Form 61 which provided the following reasons for denying Fontenot's claim: "[F]urther treatment will be denied [because]

employee was released to return to work full duties April/May 1999. Employee sought unauthorized care and ma[de] no mention of 1999 injury by accident over a year and half later. Employee appears to have had a subsequent injury[.]" On 15 March 2002, Fontenot filed a Form 33 requesting that her claim for additional compensation and medical benefits be heard. Defendants then filed a Form 33R stating that the parties were unable to agree on Fontenot's claim for benefits because her herniated disc was not caused by her 29 March 1999 injury at work and because Fontenot "did not consult her authorized treating physician with regard to her new complaints and did not seek approval for her unauthorized care within a reasonable time."

At a hearing before the Industrial Commission, Fontenot presented evidence that her herniated disc was causally related to her admittedly compensable 29 March 1999 accident at work. Specifically, Dr. Albright testified as follows:

[PLAINTIFF'S COUNSEL]: So, in your opinion, more likely than not, was the injury in March of 1999 the cause of the subsequent disc herniation that was found on [the MRI] by Dr. St. Clair?

[Objection by Defense Counsel]

[DR. ALBRIGHT]: Yes . . . .

Dr. St. Clair testified that the 29 March 1999 compensable injury "could have" caused the herniated disc which he found on the MRI taken of Fontenot's back. Dr. Derian testified as follows:

I believe to a reasonable degree of medical certainty that, more likely than not, that the patient's symptoms resulting from the on-the-job injury in March of 1999 resulted in the structural findings identified on [the MRI] scan in the year 2000, including disc herniation, disc degeneration at L5-S1 with significant nerve-root compression, particularly on the right.

Defendants contended that Fontenot's herniated disc was unrelated to the 29 March 1999 accident at work. In addition, defendants took the position that Fontenot had not taken the necessary steps to receive authorization from her employer, or the approval of the Industrial Commission, for the medical treatment related to her herniated disc (hereinafter referred to as Fontenot's "additional medical treatment").

The Industrial Commission (hereinafter "the Commission") made the following procedural findings:

25. By filing a Form 33, [Fontenot] sought approval for medical treatment with Dr. Sidhu, Dr. St. Clair, and Dr. Derian within a reasonable time after [seeking] . . . treatment [with these providers].

26. By filing a Form 18 on January 23, 2003 stating a claim for "HNP L5-S1, full extent unknown—aggravation of and/or change of condition from accepted injury," [Fontenot] filed a written request for additional medical treatment within two years after the last payment of medical compensation.

With respect to the substance of Fontenot's claim, the Commission made the following conclusions of law:

1. The greater weight of the evidence establishes a causal relationship between [Fontenot's] injury by accident on March 29, 1999 and the herniated disc in her low[er] back. [Fontenot] suffered a compensable injury by accident.

2. [Fontenot] is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the recommended back surgery and all evaluations and treatment provided by Dr. Sidhu, Dr. St. Clair, and Dr. Derian.

3. [Fontenot] is entitled to compensation for future temporary total disability, permanent partial disability, and/or temporary partial disability, should such disability arise as a result of the March 29, 1999 compensable injury by accident or as a result of the treatment therefor.

(Citations omitted.) The Commission entered an award consistent with its findings and conclusions.

Defendants now appeal.

<u>Discussion</u>

<u>I.</u>

[1] The first issue on appeal is whether the Commission erred by ordering defendants to pay Fontenot's additional medical expenses. Defendants contend that the Commission's ruling in this regard is premised upon erroneous determinations that (A) Fontenot sought approval for the medical treatment for her herniated disc within a reasonable amount of time after seeking such treatment pursuant to

section 97-25 of the General Statutes, and (B) Fontenot filed with the Commission a timely application for medical compensation related to her herniated disc pursuant to section 97-25.1 of the General Statutes.

### A. Defendants' Arguments Concerning Section 97-25

Pursuant to section 97-25 of the General Statutes, "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25 (2005). As a general rule, an employer that has accepted an employee's injury as compensable has the right to choose the treating medical providers and to direct the medical treatment of the employee. *Lakey v. U.S. Airways, Inc.*, 155 N.C. App. 169, 173, 573 S.E.2d 703, 707 (2002), *disc. review denied*, 357 N.C. 251, 582 S.E.2d 271 (2003). However, "[t]he Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions . . . ." N.C. Gen. Stat. § 97-25. To effectively request a change of treatment, an injured employee must "obtain Industrial Commission approval for the selected physician within a reasonable time after procuring the services of the physician." *Forrest v. Pitt County Bd. of Education*, 100 N.C. App. 119, 126, 394 S.E.2d 659, 663, *pl.'s pet. for disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990), *and pl.'s pet. for cert. denied*, 328 N.C. 330, 400 S.E.2d 448, *aff'd per curiam with respect to def.'s appeal*, 328 N.C. 327, 401 S.E.2d 366 (1991).

In the instant case, Fontenot first sought treatment from a medical provider of her own choosing in November of 2000, and she submitted a Form 33 requesting that her claim for additional medical benefits be heard on 15 March 2002. Defendants contend that the Commission was compelled to find that (1) the filing of a Form 33 did not constitute a request for approval of unauthorized medical treatment, and (2) even if a Form 33 was sufficient to request such approval, Fontenot's Form 33 was not filed within a reasonable time after procuring alternative treatment.

### 1.

Defendants' argument concerning the propriety of using a Form 33 to request additional medical treatment is premised upon this Court's decision in *Whitfield Laboratory Corp. of Am.*, 158 N.C. App. 341, 581 S.E.2d 778 (2003). In *Whitfield*, we held that the record did not indicate whether the claimant had sought approval for certain

treatment with his chosen physician, and we remanded the case for findings as to whether plaintiff actually requested such approval. *Id.* at 357, 581 S.E.2d at 788-89. Defendants have produced a copy of the record in the *Whitfield* case, and they note that the only references to medical treatment issues contained in that record are a Form 33 which requests payment of "medical expenses/treatment" and the parties' pretrial agreement in which the claimant asserted an issue as to whether the employer should be required to pay for medical treatment. Defendants posit that *Whitfield* stands for the proposition that a Form 33 can never be used by a claimant to request approval for a change in medical providers.

We are not inclined to read *Whitfield* as broadly as defendants. Rather, we conclude that this Court more narrowly held that Whitfield's Form 33 did not include a request for approval of alternative medical treatment. Significantly, the Form 33 at issue in the instant case differs significantly from the Form 33 filed in the *Whitfield* case. In particular, Fontenot's Form 33 contains a specific allusion to section 97-25 of the General Statutes, which authorizes the Commission to approve an employee's request for medical treatment of her own choosing. This reference provided a basis for the Commission's determination that Fontenot sought approval for her additional medical treatment. As this determination is supported by the record, it must be affirmed. *See Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480 (1997) (noting that the standard of review for an opinion and award of the Commission is "(1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusions of law[.]"); *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002) ("The Commission's findings of fact are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding.").

2.

With respect to the Commission's finding that Fontenot's request for approval was filed within a reasonable amount of time, we note that what is reasonable is a question of fact to be determined in the light of the circumstances of each case. *Cf. O'Brien v. Plumides*, 79 N.C. App. 159, 162, 339 S.E.2d 54, 55 (1986) (noting that the reasonable value of an attorney's services must be decided based upon the circumstances of a particular case); *Hardee's Food Systems, Inc. v. Hicks*, 5 N.C. App. 595, 599, 169 S.E.2d 70, 73 (1969) (discussing a rea-

sonable amount of time under a contract and reiterating the proposition that "if different inferences may be drawn, . . . such that a definite legal rule cannot be applied . . . , then the matter should be submitted to the [trier of fact]") (citation omitted).

In this case, Fontenot visited an emergency room and saw three physicians of her choosing between November of 2000 and February of 2001. On 23 January 2001, Fontenot filed a request to have defendants pay the costs of this treatment.[1] Had this request been granted, there would have been no need for intervention by the Commission. However, defendants formally refused Fontenot's request for authorization in writing on 21 September 2001. Only five months later, in March of 2002, Fontenot sought to have the Commission approve the course of treatment which defendants had declined to authorize. We conclude that, on these facts, the Commission was permitted to find that Fontenot sought its approval for her additional medical treatment within a reasonable amount of time after seeking such treatment. As this determination is supported by the record, it must be affirmed. *Ante*, slip op. at 8.

B. Defendants' Arguments Concerning section 97-25.1

Under section 97-25.1 of the North Carolina General Statutes, an injured employee's right to medical compensation expires two years after an employer's last payment of such compensation unless, prior to the running of this two-year period, "the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission."[2] N.C. Gen. Stat. § 97-25.1 (2005). Pursuant to the Commission's promulgated rules governing workers' compensation cases, an "application" for the additional medical benefits available under section 97-25.1 of the General Statutes may me made "on a Form 18M or by written request to the . . . Commission." Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 408(2) (2006).

The present case has been complicated by the remiss failure of Fontenot's attorney to file the appropriate form with the Commission. On 23 January 2001, within the two-year period after defendants' last

---

1. Our discussion of the sufficiency of Fontenot's 23 January 2001 filing is included in section I(B) of this opinion.

2. An employee may also receive additional medical compensation if the Commission makes an *ex mero motu* award of additional medical compensation within the two-year limitation period. N.C. Gen. Stat. § 97-25.1. The Commission did not make a timely *ex mero motu* award of additional medical compensation in this case.

payment of medical compensation, Fontenot's attorney filed a Form 18,[3] rather than a Form 18M. Accordingly, Fontenot was only entitled to additional medical compensation if the Form 18 which was filed on her behalf constituted a written request for such compensation. Defendants take the position that the Form 18 filed on 23 January 2001 failed to make any request for medical treatment such that the Commission was compelled to determine that it was not a written request for additional medical compensation. We disagree.

The Form 18 at issue specifically referenced a change in Fontenot's medical condition inasmuch as it stated that there was an "aggravation of and/or change of condition from accepted injury[,]" and it set forth a new diagnosis: "HNP L5-S1, full extent unknown." Fontenot's Form 18 also contained the following boilerplate language: "This notice is being sent to you [the employer] . . . in order that the medical services prescribed by [the Workers' Compensation Act] may be obtained[.]" Moreover, the record indicates that defendants were aware that Fontenot was seeking additional medical compensation: the Form 61 which defendants filed in response to Fontenot's Form 18 specifically indicated that "further treatment will be denied [because Fontenot] was released to return to work full duties April/May 1999." These facts permitted a finding by the Commission that Fontenot's Form 18 constituted a written request for additional medical treatment within two years after the last payment of medical compensation.[4] As the Commission's determination is grounded in the record, it must be affirmed. *Ante*, slip op. at 8.

## II.

[2] The next issue for our consideration is whether the Commission erred by concluding that Fontenot's disc herniation was causally related to her 29 March 1999 accident at work. Defendants contend that this conclusion is not supported by competent evidence in the record. We disagree.

---

3. A Form 18 is the document by which an injured employee provides the requisite notice to her employer that she is seeking benefits for a work-related injury. Workers' Compensation Rules of the North Carolina Industrial Commission, Rule 103(1) (2006).

4. This holding should not be construed to establish that the filing of a Form 18 will always constitute a written request for additional medical treatment. Rather, our holding is limited to a determination that in this case the Commission did not err by determining that the Form 18 at issue constituted a written request for additional medical treatment.

FONTENOT v. AMMONS SPRINGMOOR ASSOCS.

[176 N.C. App. 93 (2006)]

The Commission's causation determination must be affirmed if it is supported by **any** competent evidence in the record. *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). If the link between an employee's condition and an accident at work involves a complex medical question, as in the instant case, a finding of causation must be premised upon the testimony of a medical expert. *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Medical certainty from the expert is not required, but if an expert's opinion as to causation is based on speculation, his opinion is not competent evidence which supports a finding that an accident at work caused the employee's injury. *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003); *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). Even if an expert is unable to state with certainty that there is a nexus between an event and an injury, his testimony relating the two is at least some evidence of causation if there is additional evidence which establishes that the expert's testimony is more than conjecture. *See Singletary v. N.C. Baptist Hosp.*, 174 N.C. App. 147, 154, 619 S.E.2d 888, 893-94 (2005); *Adams v. Metals USA*, 168 N.C. App. 469, 482, 608 S.E.2d 357, 365, *aff'd per curiam*, 360 N.C. 54, —— S.E.2d —— (2005).

In this case, Drs. Albright, Sidhu, St. Clair, and Derian provided competent medical evidence which tended to link Fontenot's herniated disc to her 29 March 1999 accident at work. Accordingly, the Commission's finding that the two were causally related is supported by competent evidence in the record and must be affirmed.

III.

[3] Defendants have also raised an issue as to whether the Commission erred by awarding compensation for potential future disability. The Commission concluded that Fontenot "is entitled to compensation for future . . . disability, should such disability arise as a result of the March 29, 1999 compensable injury by accident or as a result of the treatment therefor[]" and entered a corresponding award of compensation for potential future disability.

Under the North Carolina Workers' Compensation Act, a disability is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005). Thus, the term "disability" refers to diminished earning capacity. *See id.* The

Commission's conclusion concerning disability must be affirmed if it is consistent with applicable law and is based upon findings of fact which are, in turn, based upon competent evidence in the record. *See Creel*, 126 N.C. App. at 552, 486 S.E.2d at 480.

In the instant case, it is undisputed that, at the time of the hearing before the Commission, Fontenot was working with a new employer and was earning significantly higher wages than she had earned while working for Springmoor. No evidence was presented to show that Fontenot would be under a disability in the future, and the Commission made no findings concerning any such future disability. Accordingly, the Commission's conclusion that she was entitled to potential future disability compensation is not supported by findings of fact or competent evidence in the record. The offending conclusion and the corresponding portion of the Commission's award are vacated, and this matter is remanded to the Commission for entry of a corrected order.

IV.

[4] The final issue presented by defendants is whether the Commission erred by failing to provide that its award of medical compensation was subject to the two-year statute of limitations contained in section 97-25.1 of the General Statutes. Though an award of medical compensation is subject to the statute of limitations prescribed in section 97-25.1, whether or not the Commission so specifies, we acknowledge that it is the better practice for the Commission to incorporate language to this effect in an opinion and award. *See Effingham v. Kroger Co.*, 149 N.C. App. 105, 119, 561 S.E.2d 287, 297 (2002). Standing alone, the failure of the Commission to state that its award is subject to the statute of limitations does not warrant remanding the case to the Commission; however, given that the case is being remanded pursuant to section III of this opinion, we also remand to the Commission to incorporate the statutory limitations into its award.

Affirmed in part, vacated in part, and remanded.

Judges HUNTER and GEER concur.